**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

PRINCESS FORNAH,

                     Plaintiff,

        -against-

CARGO AIRPORT SERVICES, LLC,

                   Defendant.

--------------------------------------------------------X

**<u>MEMORANDUM & ORDER</u>**

12-CV-3638 (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

      On July 23, 2012, Princess Fornah ("Plaintiff") brought this action against Cargo Airport

Services, LLC ("Defendant"). Plaintiff alleges that Defendant discriminated against her on the

basis of gender and pregnancy in violation of 42 U.S.C. § 1983 ("Section 1983"), Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e (k), 2000e-2 (a)(1) ("Title VII"), New

York State Executive Law, the Human Rights Law, Article 15, Section 291 ("SDHL"), and New

York City Administrative Code Title 8 ("CHRL"), and retaliated against her for her complaints

about such discrimination, in violation of Title VII, SDHL, and CHRL.

      On September 20, 2013, Defendant filed the instant, fully-briefed motion for summary

judgment, arguing that (1) Plaintiff cannot establish a prima facie case of Title VII liability for

harassment for sex or gender; (2) Plaintiff has not submitted any proof of pregnancy

discrimination to establish a prima facie case; (3) Plaintiff cannot establish a prima facie case of

retaliation and, even if she could, Defendant articulates a non-discriminatory reason for its

actions; and (4) the Court should decline to exercise jurisdiction over Plaintiff's state and city

law claims for lack of supplemental jurisdiction.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to my jurisdiction for this motion. (Dkt. No. 10.) For the reasons set forth below, I conclude that genuine issues of material fact exist, which preclude granting summary judgment for Defendant, except as to Defendant's strict liability on the sexual harassment claim. Therefore, Defendant's motion for summary judgment is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff was employed by Defendant at John F. Kennedy International Airport in Queens, New York. (Def.'s 56.1 Stmt. ¶ 1.) Plaintiff was hired by Defendant as an Office Attendant on January 17, 2007. (Def.'s 56.1 Stmt. ¶ 7.) Robert Limone ("Limone") has worked for Defendant since 2005 and, at all times relevant to the lawsuit, held the position of Human Resources Manager. (Def.'s 56.1 Stmt. ¶ 2.) Limone's duties included being in charge of payroll, assisting with policy development, assisting with employee training, hiring, and employee separations. (Def.'s 56.1 Stmt. ¶ 2.) Joseph Palermo ("Palermo") has worked for Defendant since 2007 and,

---

[1] The Court draws the facts described in this section largely from the parties' Statements of Material Facts submitted pursuant to Local Rule 56.1. Although the parties assign various titles to their submissions, for ease of reference, I refer to the Defendant's submissions as "Def.'s 56.1 Stmt." (Dkt. No. 31) and "Def.'s 56.1 Reply Stmt." (Dkt. No. 37). Plaintiff submitted one document, which contained her responses to Defendant's 56.1 statement and her own 56.1 statement, but the paragraphs were not continuously numbered. For ease and clarity, I will refer to them separately as "Pl.'s Resp. to Def.'s 56.1 Stmt." (Dkt. No. 34) and "Pl.'s 56.1 Stmt." (Dkt. No. 34).

Defendant objects to twenty-three of the paragraphs in Plaintiff's 56.1 Statement. (Def.'s Reply at 1.) This Court recognizes that some of the paragraphs of Plaintiff's 56.1 Statement contain mere citations to her complaint and, as such, violate Local Rule 56.1(d), which requires that "[e]ach statement by the . . . opponent pursuant to Rule 56.1(a) and (b) . . . be followed by [a] citation to evidence which would be admissible . . . ." Nevertheless, this Court has reviewed the exhibits submitted with Plaintiff's 56.1 Statement and has credited those paragraphs in Plaintiff's 56.1 Statement to which the Court has found support in the record, independent of Plaintiff's complaint.

during the relevant time period, was the general manager for Building 73. (Def.'s 56.1 Stmt. ¶ 3.) Ivan Galarza ("Galarza") was one of the Managers on Duty for Building 73 during the relevant time period, as was Gricelda Ristrepo ("Ristrepo"). (Def.'s 56.1 Stmt. ¶¶ 4, 13; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 13.)

Plaintiff was initially assigned to Building 261, but, upon her request, she was transferred to Building 73 in November, 2007. (Def.'s 56.1 Stmt. ¶¶ 9-10; Def.'s 56.1 Reply Stmt. ¶ 4.) Plaintiff's shift at Building 73 was 8:00 a.m. to 4:30 p.m. (Decl. of Rhonda L. Epstein in Supp. of Def.'s Mot. for Summ. J. ("Epstein Decl."), Exh. P, p. 281.) While employed by Defendant in 2007, Plaintiff became pregnant with her first child. (Def.'s 56.1 Stmt. ¶ 12.) Plaintiff did not experience any discrimination as a result of this pregnancy and returned to her position at Building 73 after three months of maternity leave. (Def.'s 56.1 Stmt. ¶ 12.)

Plaintiff makes a series of allegations as to Galarza's conduct, which Defendant disputes. Plaintiff claims that after she was transferred to Building 73 Galaraza asked her out weekly. (Pl.'s 56.1 Stmt. ¶ 17.) Beginning in summer 2009, Plaintiff avers that Galarza began making inappropriate sexual overtures toward her in person and through text messages. (Pl.'s 56.1 Stmt. ¶¶ 18, 20.) Plaintiff alleges that Galarza commented how much he liked her looks. (Pl.'s 56.1 Stmt. ¶ 19.) Plaintiff claims that on or about January 12, 2010, Galarza showed her a picture of his penis. (Pl.'s 56.1 Stmt. ¶ 23.) She further claims that Galarza also asked her for a photograph of her vagina between five and ten times. (Pl.'s 56.1 Stmt. ¶ 24.) Plaintiff alleges that she rejected Galarza. (Pl.'s 56.1 Stmt. ¶¶ 21, 26.) The parties agree that no other employee witnessed this alleged conduct by Galarza. (Def.'s 56.1 Stmt. ¶ 37.) It is also not disputed that Plaintiff never complained about Galarza to her union representative. (Def.'s 56.1 Stmt. ¶ 32.)

Plaintiff claims, but Defendant disputes, that Plaintiff first complained to Limone about Galarza's alleged harassment in 2009. (Pl.'s 56.1 Stmt. ¶ 22.)

Plaintiff became pregnant with her second child in 2010 and informed Defendant that she was pregnant.[2] (Def.'s 56.1 Stmt. ¶ 15.) Plaintiff claims that on May 6, 2010 all office agents in Building 73 were instructed to fill out a form regarding their familiarity with the daily operational functions of their jobs. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 17; Def.'s 56.1 Stmt. ¶ 17; *see also* Epstein Decl., Exh. K. ("form"), dated May 4, 2010.) Plaintiff refused to sign and complete the form. (Def.'s 56.1 Stmt. ¶ 17.) Plaintiff alleges, but Defendant denies that on that same day Palermo and Galarza told Plaintiff that "management doesn't need pregnant women working here, so we don't need you."[3] (Def.'s 56.1 Stmt. ¶ 16; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 16.)

Plaintiff claims that she then went to Limone to complain about the form and also complained to him regarding the alleged pregnancy comment by Palermo and Galarza and the alleged sexual harassment by Galarza.[4] (Pl.'s 56.1 Stmt. ¶¶ 17, 38, 40.) Defendant claims, but Plaintiff denies, that Plaintiff was unable to produce or describe the text messages during the

---

[2] The parties dispute when Defendant was informed of Plaintiff's second pregnancy. Defendant claims that Plaintiff informed Defendant of her second pregnancy in April, 2010. (Def.'s 56.1 Stmt. ¶ 15.) Plaintiff claims that she informed Defendant of her second pregnancy on or around March 26, 2010. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 15.)

[3] Plaintiff maintains that the form was provided to her on the same day as the alleged comment by Palermo and Galarza, May 6, 2010, however, the form is dated May 4, 2010. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 17; Epstein Decl., Exh. K, dated May 4, 2010.)

[4] Plaintiff alleges that she was also sent home from work that day by Palermo because she refused to sign the form. (Pl.'s 56.1 Stmt. ¶ 39; Epstein Decl., Exh.C, pp. 32-33.) She also claims that on that same day Limone told he that she did not violate any rules and could return to work that day. (Pl.'s 56.1 Stmt. ¶ 42.) It is undisputed, however, that Plaintiff was not paid for that day. (Boyd Decl., Exh. E, P048.)

meeting.[5]  (Def.'s 56.1 Stmt. ¶ 38; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 38.)  There is further dispute as to whether Plaintiff stated to Limone that the messages were discriminatory.  (Def.'s 56.1 Stmt. ¶ 38; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 38.)  Defendant claims that Limone advised Plaintiff that she could either file a statement immediately or produce the text messages at a later time and then Defendant would investigate.  (Def.'s 56.1 Stmt. ¶ 38.)  Defendant further avers that Limone never received a statement and Plaintiff never produced the messages.[6]  (Def.'s 56.1 Stmt. ¶ 38.)  Plaintiff claims, however, that Defendant never inspected Galarza's company issued cell phone and computer for these alleged messages and pictures.  (Pl.'s 56.1 Stmt. ¶ 41.)  It is undisputed, however, that Limone investigated Plaintiff's complaint about the form and told her that all office agents were required to fill out the form.  (Def.'s 56.1 Stmt. ¶ 17.)  Plaintiff signed the form the next day during a meeting with a union representative.  (Def.'s 56.1 Stmt. ¶ 17.)

Plaintiff further alleges that while she was pregnant Galarza told her that she was required to wear Defendant's uniform, however, Defendant does not have a maternity uniform.  (Pl.'s 56.1 Stmt. ¶¶ 28-29.)  Plaintiff claims Galarza unfairly scrutinized her maternity wardrobe.  (Pl.'s 56.1 Stmt. ¶ 28.)  The parties do not dispute, however, that Limone verified to Plaintiff that her maternity wardrobe was in compliance with Defendant's dress code.  (Pl.'s 56.1 Stmt. ¶ 29.)

---

[5] Plaintiff produced photographs of a cell phone with messages displayed on the screen and included these photographs among the exhibits to her 56.1 statement.  (*See* Boyd Decl., Exh. E, P069-P073.)  These alleged messages have the same phone number on the bottom and state: "Hello lady so what u eating lol"; "U changed your jeans"; "O so I'm a joke now :("; "Really cookup I wonder if they have one call cook down I think I would like that one more lol";  "No not at all just looks good real good that would have been the picture u O me ;)."  (*Id.*)

[6] The messages that Plaintiff has produced from Galarza do not contain her responses. (Def.'s 56.1 Stmt. ¶ 39.)  Plaintiff claims that her responses were deleted from her phone by her daughter.  (Epstein Suppl. Decl., Exhibit P, p. 302.)

Plaintiff alleges that she again complained to Limone about the harassment and retaliation on May 17, 2010.  (Pl.'s 56.1 Stmt. ¶ 46.)

A letter dated June 21, 2010, was sent from employees of Building 73,[7] not including Galarza, to human resources stating, in relevant part:

> This is to inform you regarding the inconvenience faced by the employees because of poor working conditions.
>
> Our repeated verbal complaints about the inadequate employee yielded no results. Ms. Princess Fornah continues to refuse to do her assignments leaving us responsible for her part.  The working environment has been hostel [sic] with many noisy disagreements.  Our suggestion would be to transfer her to another building.
>
> We are sure you can understand how this can affect the work productivity of the team.
>
> We request you to kindly look into the problem immediately and take suitable action.

(Epstein Decl., Exh. L, dated June 21, 2010; Def.'s 56.1 Stmt. ¶ 18.)  A meeting regarding this letter was held between the Building 73 employees, Plaintiff, Limone, and Palermo.  (Def.'s 56.1 Stmt. ¶ 19.)  At this meeting Plaintiff's co-workers complained about Plaintiff's performance.[8] (Pl.'s 56.1 Stmt. ¶ 47.)  Limone told the employees at the meeting that they had to get along in the workplace, as they had a common goal of keeping the customer happy.  (Def.'s 56.1 Stmt. ¶ 19.)

---

[7] Plaintiff disputes who drafted the letter and under what circumstances the employees signed this letter.  (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 20; Pl.'s 56.1 Stmt. ¶ 18.)

[8] Plaintiff alleges that her co-workers were directed by management to make these complaints.  (Pl.'s 56.1 Stmt. ¶ 48.)

On June 26, 2010,[9] Plaintiff and co-worker Nakeisha Jackson ("Jackson") were involved in an incident ("Jackson incident").[10] (Def.'s 56.1 Stmt. ¶ 20.) Both Plaintiff and Jackson were suspended from work for a week pending an investigation.[11] (Def.'s 56.1 Stmt. ¶ 20; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 20.) It is undisputed that some employees wrote statements recounting the incident. (Pl.'s 56.1 Stmt. ¶ 57.) After Plaintiff's suspension, Limone offered Plaintiff a transfer to Building 9.[12] (Def.'s 56.1 Stmt. ¶¶ 21-22) In order to proceed with the transfer, Limone directed Plaintiff to meet with the general manager of Building 9, Carlton Ramsay ("Ramsay"). (Def.'s 56.1 Stmt. ¶ 23.)

There is a dispute as to how Plaintiff's employment ended. Plaintiff claims that she was terminated by Limone on the same day that she refused the night shift position in Building 9. (Pl.'s 56.1 Stmt. ¶ 64.) Defendant claims that it first became aware that Plaintiff was not intending to return to work when it received a notice from the New York State Unemployment Insurance Office in September, 2010. (Def.'s 56.1 Stmt. ¶ 25.) It is undisputed that Defendant

---

[9] Despite Plaintiff admitting to Defendant's statement that the Jackson incident happened on June 26, 2010, Plaintiff's 56.1 Statement states that the Jackson incident happened "[o]n or about June 25, 2010." (Pl.'s 56.1 Stmt. ¶ 50.) Furthermore, emails submitted by Plaintiff referencing the incident place it as happening on June 26, 2010. (Decl. of Patrick J. Boyd in Supp. of Def.'s Mot. for Summ. J. ("Boyd Decl."), Exh. D, CAS 0165-0168.)

[10] Defendant characterizes this incident as a fight, while Plaintiff characterizes this incident as an argument. (Def.'s 56.1 Stmt. ¶ 20; Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 20.)

[11] The parties dispute whether Limone confiscated Plaintiff's work identification card on or around June 29, 2010 as a result of her suspension and in accordance with port authority policy. (Pl.'s 56.1 Stmt. ¶ 54; Def.'s 56.1 Reply Stmt. ¶ 54; Boyd's Decl., Exh. B, p. 66.) It is undisputed that Plaintiff's identification was not previously taken away when she took time off for vacations, medical leave, and maternity leave. (Pl.'s 56.1 Stmt. ¶ 56.)

[12] The parties dispute the terms of this transfer as will be explained in Part III of this Memorandum & Order.

challenged Plaintiff's unemployment application by claiming she was still an active employee. (Pl.'s 56.1 Stmt. ¶ 72.)  Plaintiff's application for unemployment benefits was approved and Defendant never appealed the decision.  (Pl.'s 56.1 Stmt. ¶¶ 73-74.)

## I.     Legal Standards for Summary Judgment

The standards for summary judgment are well established.  The party moving for summary judgment has the burden to demonstrate that: (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A genuine dispute as to a material fact is one that "might affect the outcome of the suit under the governing law" and that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).  In determining whether summary judgment is warranted, "[t]he Court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996)).

The moving party has the burden of establishing the absence of a genuine dispute, which may be done by using evidence in the record to negate the non-movant's claims or by merely pointing to the lack of evidence in support of the non-movant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).  The non-movant cannot create a genuine issue of material fact by "rely[ing] on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Cushing v. Morning Pride, Mfg., L.L.C.*, No. 05-CV-3612 (DRH), 2008 WL 283772, at *10 (E.D.N.Y. Jan. 30, 2008) (citation and

internal quotation marks omitted).  Neither party may rely on conclusory allegations or

unsubstantiated speculation, *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), but must set

forth, by sworn affidavits or other documentary evidence, specific facts that "cannot be or [are]

genuinely disputed."  *See* FED. R. CIV. P. 56(c)(1).  "Speculation, conclusory allegations, and

mere denials are not enough to raise genuine issues of fact."  *Nat'l Westminster Bank USA v.

Ross,* 676 F. Supp. 48, 51 (S.D.N.Y. 1987).

## II.  <u>Title VII</u>

Defendant first moves for summary judgment on Plaintiff's Title VII sexual harassment

claim arguing that it cannot be liable for any sexual harassment committed by its employee,

Galarza.  First, Defendant argues that because Galarza was not Plaintiff's supervisor, liability

cannot be imputed to it for his alleged actions.  (Mem. of Law in Supp. of Def.'s Mot. for Summ.

J. ("Def.'s Mem. of Law"), at 2.)  Second, Defendant argues that because it exercised reasonable

care to prevent and promptly correct any harassing behavior brought to its attention, it also

cannot be held liable.  (Def.'s Mem. of Law, at 3.)

A.  Strict Liability

"Under Title VII, an employer's liability for [sexual] harassment may depend on the status

of the harasser.  If the harassing employee is the victim's co-worker, the employer is liable only if

it was negligent in controlling working conditions.  In cases in which the harasser is a

'supervisor,' however, different rules apply.  If the supervisor's harassment culminates in a

tangible employment action, the employer is strictly liable."  *Vance v. Ball State Univ.*, 133 S.Ct.

2434, 2439 (2013).  "[A]n employer may be vicariously liable for an employee's unlawful

harassment only when the employer has empowered that employee to take *tangible employment*

*actions* against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2243 (emphasis added) (internal quotation marks omitted). "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Id.* at 2454. "Under the definition of 'supervisor' . . . the question of supervisor status, when contested, can very often be resolved as a matter of law before trial." *Id.* at 2450.

Defendant argues that it cannot be held vicariously liable for Plaintiff's alleged harassment because Galarza was not a supervisor under *Vance*. (Def.'s Mem. of Law, at 2-3.) Specifically, Defendant argues that as Manager on Duty Galarza did not have the power to hire, fire, set Plaintiff's salary or schedule, or make any other significant change to Plaintiff's employment status and, thus, was not a supervisor. (Def.'s Mem. of Law, at 3.) Plaintiff claims that Galarza was indeed a supervisor under Title VII. (Mem. of Law in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem. of Law"), at 8-9.) Plaintiff does not address, and, therefore, seems to concede, that Galarza did not have the power to hire, fire, promote, reassign with significantly different responsibilities, or make decisions causing a significant change in benefits. (Pl.'s Mem. of Law, at 8-9.) Plaintiff argues, albeit without any relevant citation or support, that the use of "such as" to introduce the list of significant changes in employment status is non-exhaustive. (Pl.'s Mem. of Law, at 8-9.)

Plaintiff is correct in her unsupported assertion that this list is non-exclusive. *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 93 (2d Cir. 2002) (quoting *Burlington Industries, Inc. v.*

*Ellerth*, 524 U.S. 742, 761 (2002)).  The question then becomes whether Galarza had the power to effect tangible employment actions; i.e. whether he had the power to significantly change Plaintiff's employment status.  Plaintiff argues that Galarza had this power and exercised it by assigning Plaintiff tasks that were outside of her job duties, such as carrying boxes from the warehouse.  (Pl.'s Mem. of Law, at 9.)  Plaintiff further argues that Galarza's power manifested in this power to grant or deny overtime hours and days off.  (*Id.*)

Putting aside the fact that Plaintiff testified at her deposition that carrying boxes was a job duty from which she sought an accommodation during her pregnancy (*see* Pl.'s 56.1 Stmt. ¶ 6), assigning tasks outside Plaintiff's job duties does not rise to the level of a tangible employment action.  "The ability to direct another employee's tasks is simply not sufficient [to constitute a tangible employment action].  Employees with such powers are certainly capable of creating intolerable work environments . . . but so are many other co-workers."  *Vance*, 133 S. Ct. at 2448 (citation omitted).

Plaintiff also argues that the power to grant or deny days off constitutes the power to take a tangible employment action.  Plaintiff testified at her deposition that her vacation requests were submitted to Palermo and that she would notify Palermo *or* Galarza if she did not intend on going into work.  (Boyd Decl., Exh. A, at 199.)  Even viewing this testimony in the light most favorable to Plaintiff, it does not show that Galarza was vested with the power to grant or deny her vacation requests or do anything beyond fielding a phone call from Plaintiff that she was not coming to work.  Consequently, Plaintiff's unsupported assertion that Galarza had the power to grant or deny days off cannot constitute a tangible employment action capable of classifying Galarza as a supervisor.

Lastly, Plaintiff claims that Galarza's alleged power to grant or deny overtime hours constitutes the power to effect a tangible employment action. Defendant's employee handbook provides the "Cargo Duty manager or supervisor" with the power to authorize overtime.[13] (Epstein Decl., Exh. G, p.4.) Plaintiff testified in her deposition:

> Q: How did [Galarza] treat you differently than any of the other employees in the office?
> A: He gave other employees overtime, I never got overtime, I ask for overtime.
> Q: Was overtime decided by the union and seniority?
> A: I really don't know about that, but I know they give overtime in the office and everybody has to get equal share.
> Q: And you know that based upon what, as in your role as a shop steward.
> A: No.
> Q: Did you ever complain to the union that you weren't getting overtime?
> A: No.

(Boyd Decl., Exh. A, p. 280). Plaintiff proffers no additional evidence as to this alleged power.

Even viewing Plaintiff's testimony in the light most favorable to her, i.e. that Galarza was vested with this power to grant and deny overtime, she has failed to establish that such a power effected "a *significant* change in employment status." "[D]enial of overtime may be sufficient in some cases to constitute a tangible employment action . . . ," *Loudermilk v. Stillwater Milling Co.*, 551 F. Supp. 2d 1281, 1290 (N.D. Okla. 2008), however, for such a power to be the power to effect a tangible employment action it must effect a *significant* change in employment status, *Vance*, 133 S. Ct. at 2243.

Plaintiff does not provide any evidence as to how many overtime opportunities were available to her, or even how many such opportunities were denied her by Galarza. The parties

---

[13] It should be noted that Plaintiff fails to cite this employee handbook section. Both parties agree that Galarza's title was "Manager on Duty," but neither party has alleged that this employee handbook section empowering the "Cargo Duty manager or supervisor" applied to Galarza. Nevertheless, the Court will look at the evidence in the light most favorable to Plaintiff and read this section as applying to Galarza.

agree that Galarza was not the exclusive Manager on Duty, but was one of several Managers on Duty for Building 73. (Def.'s 56.1 Stmt. ¶ 4; Pl.'s Resp. to Def.'s 56.1 Stmt ¶ 4.). Crediting the employee handbook in support of the statement that Manager on Duty can grant or deny overtime, any of these Managers on Duty for Building 73 could grant or deny overtime depending on who was acting as Manager on Duty at that time. Plaintiff's provision of one page of deposition testimony with conclusory allegations as to the denial of overtime without a shred of supporting evidence as to the frequency with which Galarza denied her overtime is not enough to create a genuine issue of fact to present to a jury. *See Loudermilk*, 551 F. Supp. 2d at 1290 (holding plaintiff's statement *and* timecard history report not sufficient evidence to create a genuine issue of fact to present to a jury); *Gay v. Aramark Uniform & Career Apparel, Inc.*, No. H-07-1161, 2007 WL 4190781, at *7 (S.D. Tex. Nov. 21, 2007) (holding plaintiff failed to raise fact issue as to whether she suffered tangible employment action because besides asserting denial in overtime privileges, she neither produced nor pointed to any evidence in record to create such issue); *see also Hansen v. Perry Tech.*, 206 F. Supp. 2d 1223, 1235 (S.D. Fla. 2002).

Consequently, "Plaintiff [does] not present any argument specifically related to the denial of overtime that would [assist a finder of fact] in concluding that such denials amounted to a tangible employment action." *Loudermilk*, 551 F. Supp. 2d at 1290. As a matter of law, a reasonable jury could not, based on the evidence provided by Plaintiff, find that Galarza's alleged power to grant and deny Plaintiff overtime effected a significant change in her employment status. Therefore, Plaintiff has also set forth no genuine issue of material fact as to whether Galarza was a supervisor. As such, no reasonable jury could find that Galarza was a supervisor capable of imputing strict vicarious liability onto Defendant for his alleged actions.

B.  Negligence Liability

We now turn to the alternative theory under which Defendant denies that it could be held liable for Galarza's alleged sexual harassment—negligence in controlling the working conditions.  "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance*, 133 S. Ct. at 2439.  Plaintiff must "demonstrate[] that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'"  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d. 98, 107 (2d Cir. 2011) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

Defendant argues that it was not negligent in controlling the working conditions because it exercised reasonable care to prevent and correct any harassing behavior brought to its attention. Defendant claims that it provided a reasonable avenue for complaints through a policy against harassment, which was written in the employee handbook that Plaintiff received (Def.'s Mem. of Law, at 3-4), and that Plaintiff previously utilized regarding another co-worker.  (*Id*.)  Defendant also contends that there is no evidence that it knew, or should have known of the harassment, but failed to take appropriate remedial action.  (Def.'s Mem. of Law, at 4.)

In response, Plaintiff argues that Defendant was negligent for failing to prevent the harassment, provide a complaint system, and act on complaints.  (Pl.'s Mem. of Law, at 10.) Plaintiff further alleges Defendant effectively discouraged complaints.  (*Id*.)  Plaintiff argues that the policy in Defendant's handbook is unclear, lacks protection from retaliation, and does not specifically state the proper way to file a complaint.  (Pl.'s Mem. of Law, at 10-11)  Plaintiff also

claims that she complained to Limone in 2009 and 2010 about Galarza, but both times Limone failed to act or investigate. (Pl.'s Mem. of Law, at 10.)

       1. Reasonable Avenue for Complaint

The first question is whether there is a genuine issue of material fact as to whether Defendant provided Plaintiff with a reasonable avenue for complaint. "Although not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has [exercised reasonable care in preventing and correcting sexually harassing conduct]. Where an employer has promulgated a sexual harassment policy and informs all employees of its contents, such procedures will generally be deemed adequate, so long as employees are capable of invoking the process to enforce the policy." *Wahlstrom v. Metro-North Commuter R.R.*, 89 F. Supp. 2d 506, 523 (S.D.N.Y. 2000) (internal quotation marks omitted) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 295 (2d Cir. 1999)).

Defendant has a policy against discrimination in its employee handbook. (Def.'s 56.1 Stmt. ¶¶ 5, 27; *see also* Suppl. Decl. of Rhonda L. Epstein in Supp. of Def.'s Mot. for Summ. J. ("Epstein Suppl. Decl."), Exh. G, § 110.) It is undisputed that Defendant's company handbook contained the following policy:

> The Company is an equal opportunity employer that strictly adheres to all applicable federal, state and local anti-discriminatory laws. The Company proudly employs individuals from many different ethnic, racial, national, and religious backgrounds.
>
> The Company maintains a zero tolerance policy toward workplace discrimination. Conditions of employment, job assignments, pay and promotions or demotions will be based solely on work performance and operational needs. Slurs, insults and the like are not acceptable and will not be tolerated.

If you feel that you are the victim of discrimination, or if you have witnessed what you believe to be inappropriate behavior, you should bring this to the attention of your supervisor, or General Manager. If it is not practical, you should contact Human Resources.

The Company will not tolerate any form of discrimination of employees. All workers, including supervisors and manager, will be subject to discipline, up to and including discharge, for any violation of this policy.

The Company will promptly investigate each complaint to determine whether certain conduct constitutes discrimination. Based on a review of the facts and circumstances of a particular case, [Defendant] will take appropriate remedial action. All such complaints are kept confidential by the company.

(Boyd Decl., Exh. D, CAS0177.) It is also undisputed that Plaintiff received a copy of the employee handbook containing this policy and signed a written acknowledgment of receipt for it. (Def.'s 56.1 Stmt. ¶¶ 6, 28.) Based on what has been presented, the Court finds that there is no genuine issue of material fact as to whether Defendant provided Plaintiff with a reasonable avenue of complaint. Plaintiff acknowledged receipt of the employee handbook which contained a discrimination policy. *See Notaro v. Fossil Industries, Inc.*, 820 F. Supp. 2d 452, 459 (E.D.N.Y. 2011) (finding no issue of fact as to whether there was a reasonable avenue of complaint where plaintiffs acknowledged receipt of employee handbook containing policy and procedure for sexual harassment complaint).

Furthermore "a court may still find, as a matter of law, that an employer provided a 'reasonable avenue of complaint' if the evidence shows that the plaintiff in fact knew how to make a complaint and that the complaint was adequately addressed." *McArdle v. Arms Acres, Inc.*, No. 03-CV-05721 (PGG), 09 WL 755287, at *8 (S.D.N.Y. Mar. 23, 2009). Plaintiff testified in her deposition that she complained to Palermo, her General Manager, that a Building 73 co-worker, Luis Vasquez, was bumping into her in the hallway. (Epstein Decl., Exh. C, pp.

151-52.)  It is undisputed that Palermo confronted Vasquez infront of Plaintiff, directed him to stop, and Plaintiff never had this problem with Vasquez again.  (*Id.* at pp. 151-53.)  Plaintiff characterized her complaint to Palermo about Vasquez as one about harassment.  (*Id.* at p. 153.)  Plaintiff's actions were in accordance with Defendant's policy.  She felt that she was the victim of sexual harassment and brought it to the attention of the General Manager.  (*See* Boyd Decl., Exh. D, CAS0177 ("If you feel that you are the victim of discrimination, or if you have witnessed what you believe to be inappropriate behavior, you should bring this to the attention of your supervisor, or General Manager.").)  Plaintiff also admitted that Palermo acted upon her complaint by talking to Vasquez and Vasquez never did the complained of activity again.  Plaintiff's complaint was, therefore, adequately addressed.  *See id.*

Plaintiff makes the additional, unsupported argument that Defendant's policy "is not very clear" because it does not state specifically the "proper way to file a complaint."  Such argument is insufficient to show a genuine issue of material fact as to whether Defendant provided Plaintiff with a reasonable avenue for complaint.  Plaintiff proffers the unsupported argument that Defendant's policy was deficient because it did not offer protection against retaliation.  Non-retaliation is not a mandatory feature to be included in a harassment policy in order for such policy to be a reasonable avenue for complaint.  *See Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001) (holding confidentiality guarantee and non-retaliation not mandatory to demonstrate employer exercised reasonable care to prevent sexually harassing behavior).  As such, Plaintiff's argument is unpersuasive and there is no genuine issue of material fact as to whether Defendant offered a reasonable avenue for complaint.  As a matter of law, Defendant provided Plaintiff a reasonable avenue for complaint.

2.  Knew or Should Have Known About the Alleged Harassment

The second question is whether there is a genuine issue of material fact as to whether

Defendant "'knew, or in the exercise of reasonable care should have known, about the

harassment yet failed to take appropriate remedial action.'"  *Howley v. Town of Stratford*, 217

F.3d 141, 145 (2d Cir. 2000) (quoting *Richardson v. N.Y. State Dept. of Corr. Service*, 180 F.3d,

426, 441 (2d Cir. 1999)).  "This standard requires a plaintiff to show that (1) someone had actual

or constructive knowledge of the harassment, (2) the knowledge of this individual can be

imputed to the employer, and (3) the employer's response, in light of that knowledge, was

unreasonable." *Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009) (emphasis in original).  "The

reasonableness of the company's response must be assessed by the jury based on the totality of

circumstances." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998).

Defendant alleges that Plaintiff never complained to Limone of harassment by Galarza,

such that it did not and should not have known about the alleged harassment.  Defendant admits

that Plaintiff met with human resources on or around May 6, 2010, but claims she only

mentioned text messages from Galarza, but could not, and never did, produce them nor submit a

complaint.  (Def.'s Mem. of Law, at 5.)  Plaintiff alleges that Defendant knew about the alleged

harassment because she complained about Galarza's unwanted sexual advances in 2009 and, on

or about, May 6, 2010, but failed to act or investigate.  (Pl.'s Mem. of Law, at 10).

A genuine issue of material fact exists as to whether Defendant had actual or constructive

knowledge of the alleged sexual harassment.  While the parties agree that Plaintiff spoke with

Limone on or about May 6, 2010, and mentioned text messages from Galarza, there is a material

dispute as to what Plaintiff said about those messages.  Defendant claims Plaintiff did not

describe the nature of their contents or indicate that they were harassing, such that Limone did not have knowledge of potential harassment. Plaintiff argues that she described the content and harassing nature to Limone, such that he had the requisite knowledge to impute to Defendant.

The content of Plaintiff's conversation with Limone on or about May 6, 2010, is material as to whether it was enough to provide actual or constructive knowledge of the sexual harassment to Limone and, by extension, Defendant. *See Dabney v. Christmas Tree Shops*, No. 10-CV-8734, 2013 WL 382668 (S.D.N.Y. July 24, 2013) (granting motion for summary judgment because Plaintiff could not allege employer had knowledge of harassment because she did not tell anyone); *Suber v. Pitney Bowes, Inc.*, No. 98-CV-2914 (HB), 1999 WL 102815 (S.D.N.Y. Feb. 29, 1999) (denying summary judgment because of factual dispute as to whether plaintiff reported alleged harassment). Viewing the evidence in the light most favorable to Plaintiff, a rational jury could conclude that Defendant had actual or constructive knowledge of the harassment capable of imputing liability to it. *See Notaro*, 820 F. Supp. 2d at 459. Defendant's motion for summary judgment is therefore denied as to Plaintiff's sexual harassment claim because there is a genuine issue of material fact as to whether Defendant was negligent in controlling the working conditions and therefore is liable, in its capacity of employer, for alleged sexual harassment by its employee.

### III.  Pregnancy Discrimination

Defendant next moves for summary judgment on Plaintiff's pregnancy discrimination claim by arguing that Plaintiff has not submitted any evidence to establish a prima facie case of pregnancy discrimination. The Pregnancy Discrimination Act, 42 U.S.C. § 2000e (k), expands Title VII's protection from discrimination because of sex to include"because of or on the basis of

pregnancy, childbirth, or related medical conditions." "A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. " *Quaratino v. Tiffany & Co.*, 571 F.3d 58, 64 (2d Cir. 1995), *vacated and remanded on other grounds*, 166 F.3d 422 (2d Cir. 1999). The third prong of the prima facie case is not only satisfied by discharge, but can also be satisfied by an adverse employment action. *See Wright v. Monroe Cmty. Hosp.*, 493 Fed.Appx. 233, 236-37 (2d Cir. 2012)*.* In satisfaction of the fourth prong, a plaintiff may alternatively show that the discharge "occurred in circumstances giving rise to an inference of unlawful discrimination." *See id*. at 64. After a plaintiff establishes a prima facie case of pregnancy discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, which then shifts the burden back to the plaintiff to prove that the proffered reason was a mere pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

There are genuine issues of material fact regarding Plaintiff's pregnancy discrimination claim. Namely, there is a genuine issue of material fact as to whether Plaintiff suffered an adverse employment action in satisfaction of prong three of the prima facie case of pregnancy discrimination. Plaintiff listed the following alleged adverse employment actions relating to her claim for pregnancy discrimination: "Plaintiff was (1) wrongfully reprimanded for wearing her maternity wardrobe by Galarza, (2) scrutinized Plaintiff's use of bathroom by Galarza even though she was pregnant, (3) was told that 'management [doesn't] need pregnant women

working here anyway, so we don't need you' by Palermo and Galarza, and (4) was suspended and then ultimately fired."  (Pl.'s Mem. of Law, at 14-15.)

A plaintiff suffers an adverse employment action when she experiences a "materially adverse change in the terms and conditions of employment."  *Richardson v. N.Y. State Dep't of Corr. Servcs.*, 180 F.3d 426, 446 (2d Cir. 1999) (quoting *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)), *abbrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  Adverse employment actions may include termination from a job, decrease in salary, material reduction in benefits or responsibilities, or a less distinguished title.  *See Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).  Changes in assignments or duties that do not "radical[ly] change" the nature of the employment are not typically adverse employment actions.  *See Galabya*, 202 F.3d at 641 (quoting *Rodriquez v. Bd. of Educ.*, 620 F.2d 363, 366 (2d Cir. 1980)).  Disciplinary measures do not constitute adverse employment actions unless they "affect ultimate employment decisions such as promotion, wages, or termination."  *Regis v. Metropolitan Jewish Geriatric Center*, No 97–CV–0906 (ILG), 2000 WL 264336, at *8 (E.D.N.Y. Jan. 11, 2000).

Plaintiff's first three alleged adverse employment actions fail, as a matter of law, to rise to this level.  Firstly, Plaintiff fails to show that Galarza's "reprimand" of Plaintiff for wearing maternity clothes in lieu of Defendant's uniform rises to the level of an adverse employment action.  It is *undisputed* that after Galarza's alleged reprimand, Limone verified to Plaintiff that her wardrobe was in compliance with Defendant's policy, such that no further action would be, and was not, taken against her for her maternity clothing.  Galarza's alleged reprimand, therefore,

cannot constitute an adverse employment action. *See Irvine v. Video Monitoring Servs. of Am., L.P.*, No. 98-CV-8725 (NRB), 2000 WL 502863, at *6 (S.D.N.Y. Apr. 27, 2000) (reprimand resulting in no further action was not sufficiently adverse).

Secondly, Plaintiff fails to provide any evidence showing that Galarza's alleged scrutiny of her bathroom breaks during her pregnancy rises to the level of an adverse employment action. She fails to present evidence that any disciplinary measure, let alone ultimate employment decision, happened in relation to Galarza's scrutiny. *See Regis*, 2000 WL 264336, at *8. Thirdly, Plaintiff fails to proffer any evidence that the alleged comment by Palermo and Galarza rises to the level of an adverse employment action. She never provides any connection between the alleged comment and any ultimate employment decision. Plaintiff merely alleges that such comment was made to her. *See Scott v. City of N.Y. Dept. of Corr.*, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) ("[V]erbal abuse is typically insufficient to constitute an 'adverse employment action' because '[n]egative or otherwise insulting statements are hardly even actions, let alone "adverse actions."'"); *see also Teachout v. N.Y. City Dep't. of Educ.*, 2006 WL 452022, at *13 (S.D.N.Y. Feb. 22, 2006)) ("Negative comments . . . are not, standing alone, adverse employment actions, because mere comments do not materially affect employment.").

There is, however, a genuine issue of material fact regarding whether Plaintiff's fourth alleged adverse employment action, namely her "suspension and ultimate firing," constitutes an adverse employment action. There are copious factual disputes surrounding the discontinuance of Plaintiff's employment with Defendant. Plaintiff claims that she was terminated by Limone on the same day that she refused the transfer to the night shift position in Building 9, which was offered following Plaintiff's suspension due to the Jackson incident. (Pl.'s 56.1 Stmt. ¶ 64.)

However, Defendant claims that Plaintiff was never terminated, but that it first became aware that Plaintiff did not intending to return to work when it received notice from the New York State Unemployment Insurance Office in September, 2010.  (Def.'s 56.1 Stmt. ¶ 25.)  As a matter of law, termination is an adverse employment action.  *See Quaratino*, 571 F.3d at 64.  There is a clear factual dispute as to whether Plaintiff was terminated by Defendant.

There are also genuine issues of material fact as to whether the attempted transfer to Building 9 constituted a constructive discharge, which would also be an adverse employment action.  Constructive discharge occurs in the absence of a "discrete, identifiable act," when an employer, "'rather than directly discharging an individual, intentionally creates an intolerable atmosphere that forces an employee to quit voluntarily.'" *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)); *see also Morris v. Schroder Cap. Mgmt. Int'l*, 481 F.3d 86, 89 (2d Cir. 2007) (holding that constructive discharge "occurs 'when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983))).  Working conditions are sufficiently "intolerable" when they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987).

From the outset, the parties dispute the terms of the transfer to Building 9.  Plaintiff alleges that this transfer was for the night shift that ended at 12:30 a.m., such that she felt unsafe going home after work on public transportation.  (Pl.'s Resp. to Def.'s 56.1 Stmt ¶¶ 21-22; Pl.'s 56.1 Stmt. ¶ 62.)  Defendant claims that the transfer was to be for a morning shift.  (Def.'s 56.1

Stmt.¶ 23.)  Limone testified at his deposition that the opening initially offered to Plaintiff was for the 4:00 p.m. to 12:30 a.m. shift, but after Plaintiff expressed concern, she was offered the same working hours that she had at Building 73.  (Epstein Decl., Exh. D, pp. 73-75.)

There is a further dispute as to whether Plaintiff ever met with the General Manager of Building 9, Ramsay.  Defendant claims that such a meeting was a necessary step in effectuating the transfer and Plaintiff failed to follow through.  (Def.'s 56.1 Reply Stmt.¶ 64.)  Plaintiff alleges that on August 17, 2010, Limone informed her that a day shift opening in Building 9 was available, however, when she subsequently met with Ramsay, he informed her that there were no openings.  (Pl.'s 56.1 Stmt. ¶¶ 65-66.)  Defendant contends that Plaintiff never met with Ramsay and, instead, missed two scheduled meetings with him.  (Def.'s 56.1 Stmt. ¶ 24; Def.'s 56.1 Reply Stmt. ¶ 66.)

The parties' competing versions of the events surrounding the Building 9 transfer implicate the parties' credibility and intent.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."  *Anderson*, 477 U.S. at 249.  It is also a question for the jury to determine whether the working conditions were sufficiently intolerable so as to be "so difficult or unpleasant that a *reasonable* person in the employee's shoes would have felt compelled to resign."  *Lopez*, 831 F.2d at 1188 (emphasis added) (quoting *Pena*, 702 F.2d at 325); *see also Grand Trunk Ry. Co. of Canada v. Ives*, 144 U.S. 408, 417 (1892)  ("The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a

similar state of affairs.").  Whether to credit Plaintiff's or Defendant's evidence surrounding the transfer, as well as determining the objectionable endurability of the working conditions are questions of fact to be answered by the jury, not matters of law for the Court on summary judgment.  *Fitzgerald v. Henderson*, 251 F.3d 345, 366 (2d Cir. 2001).  There are, therefore, genuine issues of material fact as to whether Plaintiff suffered an adverse employment action and can, therefore, establish a prima facie case of pregnancy discrimination.  Defendant's motion for summary judgment as to this claim is denied.

## IV. Retaliation

Defendant finally moves for summary judgment on Plaintiff's claim of retaliation by arguing that Plaintiff fails to establish a prima facie case of retaliation or, in the alternative, fails to establish pretext in response to Defendant's proffered legitimate non-discriminatory reason.

"To make out a prima facie case of retaliation, an employee must show that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action. . . . To prove that he engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII. . . . However, the plaintiff must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. . . . Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."  *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 42 F.2d 590, 593 (2d Cir. 1988) (citations and internal quotations omitted).  "[U]nder the second step of the burden-shifting analysis, the onus falls on the employer to articulate a

legitimate non-retaliatory reason for the adverse employment action . . . . Finally, as for the third step, once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted).

Case law in this district permits the Court to assume, *arguendo*, that Plaintiff establishes a prima facie case and that Defendant articulates a non-retaliatory reason for the adverse employment action, such that the Court can focus on whether there is a genuine issue of material fact as to whether the proffered reason is pretextual. *See Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 433 (E.D.N.Y. 2012); *Gengo v. City Univ. of N.Y.*, No. 07-CV-681 (KAM) (JMA), 2010 WL 6372012, at *13 n.17 (E.D.N.Y. Dec. 2, 2010), *adopted by* No. 07-CV-681 (KAM) (JMA), 2011 WL 1204716 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 479 Fed. Appx. 382 (2d Cir. 2012); *see also Dixon v. Int'l Fed'n of Accountants*, 416 Fed. Appx. 107, 110-11 (2d Cir. 2011); *Graves v. Finch Pryun & Co.*, 457 F.3d 181, 188 (2d Cir. 2006); *Borcely v. Wyandach Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 199 (E.D.N.Y. 2009) (citing *Idrees v. City of N.Y.*, No. 04-CV-2197, 2009 WL 142107, at *9 (S.D.N.Y. Jan. 21, 2009) (collecting cases)); *Matthews v. Huntington*, 499 F. Supp. 2d 258, 264 (E.D.N.Y. 2007).

Plaintiff alleges that she was retaliated against because she complained about alleged sexual harassment and pregnancy discrimination. Specifically, Plaintiff alleges that Palermo chose to accept statements that placed blame on the Plaintiff for the Jackson incident over statements that placed the blame on both her and Jackson or Jackson alone. (Pl.'s 56.1 Stmt. ¶ 61.) Plaintiff further avers that the subsequent transfer to Building 9 was retaliatory.

Plaintiff's alleged prima facie case of retaliation includes that she engaged in protected activity when she complained to Limone about sexual harassment and pregnancy discrimination. (Pl.'s Mem. of Law, at 19.)  Complaining to Limone, Plaintiff alleges, put Defendant on notice of the protected activity.  (*Id.*)  Plaintiff then suffered adverse employment actions, which included being blamed for the Jackson incident and subsequent transfer to Building 9.[14]  (*Id.*)  Finally, the proximate time between Plaintiff's complaint and the adverse employment actions established a causal connection.  (*Id.*)  Defendant proffered legitimate non-discriminatory justifications the following business reasons: Plaintiff was not getting along with her co-workers in Building 73, Plaintiff fought with Jackson, and Defendant's client, Emirates Airline, did not want Plaintiff to work on its account anymore at Building 73.  (Def.'s Mem. of Law, at 12.)

There are sufficient questions of material fact as to whether Defendant's proffered reasons are pretextual.  A reasonable jury might infer that Defendant's reasons for transferring Plaintiff to Building 9 from Building 73 are pretextual.  "A showing that similarly situated employees belonging to a different [protected class] received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext . . . ."  *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir.

---

[14] It should be noted that an adverse employment action for a prima facie retaliation claim is broader than an adverse employment action for a prima facie pregnancy discrimination claim. "[T]he proper inquiry now is whether the employer's actions [were] harmful to the point that the could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 169 (2d Cir. 2010) (quoting *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 57) (internal quotation marks omitted).  A transfer can be an adverse employment action under a retaliation claim. *See Kessler v. Westchester Cnty. Dept. of Social Servs.*, 461 F.3d 199, 209-10 (2d Cir. 2006) (holding rational fact finder could infer that reasonable employee could be dissuaded from alleging discrimination if doing so would result in transfer under retaliation claim); *see also Guerrero v. Lowe's Home Centers, Inc.*, 254 Fed. Appx. 865, 867 (2d Cir. 2007) (holding plaintiff established prima facie case of retaliation regarding transfer within company subsequent to protected activity).

2000).  Furthermore, "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury."  *Id.* at 39; *see also Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998) (inconsistent application of company disciplinary policy was sufficient for jury to find that employer's defense was pretext).

Plaintiff has produced evidence of emails by various employees of Defendant recounting the Jackson incident.  (Boyd Decl., Exh. D, CAS0165, CAS0166, CAS0168.)  From these emails, there is a question of whether Plaintiff was at fault for the Jackson incident and thus merited a transfer.  A reasonable jury could find that Jackson and Plaintiff were similarly at fault and, thus, similarly situated.  A reasonable jury could also find that despite this similar situation, Jackson and Plaintiff were treated differently because Jackson, who did not complain about sexual harassment and pregnancy discrimination, was permitted to return to Building 73 while Plaintiff was transferred.  Therefore, a reasonable jury could find pretext in Defendant's proffered legitimate non-retaliatory reason.

Thus, even assuming, *arguendo*, Plaintiff establishes a prima facie case of retaliation and Defendant proffers a legitimate non-retaliatory reason, there is still a genuine issue of material fact for the jury as to whether Defendant's proffered reason was merely pretext.  Defendant's motion for summary judgment as to Plaintiff's retaliation claim is denied.

### V.  State and City Law Claims

Defendant asks that should the Court grant its motion for summary judgment as to Plaintiff's federal claims, the Court decline to exercise its supplemental jurisdiction over Plaintiff's state and city law claims.  Because the Court is not dismissing any of Plaintiff's

federal law claims, the Court will continue to exercise its jurisdiction over Plaintiff's state and city law claims. *See* 28 U.S.C. § 1367 (2012).

## **CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment granted in part and denied in part.


Dated: January 2, 2014
      Brooklyn, New York

*Ramon E. Reyes Jr.*

**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**